**Reggie OLIPHANT, Movant-Appellant,**

v.

**STATE of Missouri, Respondent-Respondent.**

**No. SD 34630**

Missouri Court of Appeals,
Southern District,
Division Two.

August 4, 2017

---

Jedd C. Schneider, of Columbia, Missouri for Appellant.

Joshua Hawley, Attorney General and Robert J. Bartholomew, Jr., Assistant Attorney General of Jefferson City, for Respondent.

WILLIAM W. FRANCIS, JR., J.

Reggie Oliphant ("Oliphant"), appeals from the judgment of the motion court denying his Rule 24.035[1] motion to set aside his convictions for four counts of forgery as a persistent offender. Because the motion court's decision to deny the post-conviction motion after an evidentiary hearing was not clearly erroneous, we affirm.

**Facts and Procedural History**

In November 2012, Oliphant was charged by felony information, as a persistent offender, with ten counts of forgery occurring in November 2011.

On March 9, 2015, Oliphant and plea counsel appeared at a plea hearing and announced Oliphant's intention to plead guilty to Counts I through IV, as a persistent offender, pursuant to a plea agreement with the State.

The trial court acknowledged receipt of a written plea agreement, which stated that Oliphant would receive concurrent sentences of eight years on Counts I through IV, would pay restitution in the amount of $3,500, the State would dismiss Counts V through X, and a Sentencing Assessment Report would be waived. The State and Oliphant confirmed that was the plea agreement, and it was Oliphant's intention to plead guilty under that plea agreement. Oliphant also confirmed that he had signed the written plea agreement after reading it and understanding it, he had sufficient time to talk with plea counsel regarding his guilty plea, had told plea counsel everything he needed to know about his case to render proper advice, and was satisfied with plea counsel's services. Oliphant acknowledged that he understood he had a right to a jury trial and all associated rights, and by pleading guilty, he was giving up those rights. Oliphant confirmed no one suggested to him he should answer questions untruthfully.

The State recited for the record that Oliphant was pleading guilty to Counts I through IV as a persistent felony offender. As such, the State declared that the range in punishment for both a class C and a class B felony was from 1 day to 1 year in the county jail, 2 to 15 years in the Department of Corrections, and a fine not to exceed $5,000.

The State further recited that if the case were to proceed to trial, the evidence would be that on or about November 18 and 20, 2011, Oliphant, acting with others, with the purpose to defraud, transferred with the knowledge or belief that they would be used as genuine, checks numbered 13456, 13426, 13427, and 13464,

---

1. All rule references are to Missouri Court Rules (2017).

knowing the checks had been filled out to appear that they were competed with the authority of one who did not give such authority. Oliphant agreed with the facts stated for each count. Plea counsel also agreed that the State could make a submissible case.

Oliphant denied that anyone had made him any promises, other than the plea agreement, or pressured him to plead guilty. Oliphant stated he was pleading guilty because he was guilty. Oliphant waived his right to a Sentencing Assessment Report. Oliphant then pleaded guilty to Counts I through IV as a persistent offender. The trial court found there was a factual basis for the pleas of guilty and accepted Oliphant's pleas of guilty as voluntarily made with an understanding of his rights.

Oliphant had three other cases pending before the court, including a class B felony offense of distribution of a controlled substance as a persistent drug offender, and two probation cases.[2] In addition, Oliphant had recently been sentenced in another county to 13 years as a persistent drug offender, which precluded him from being eligible for parole. Plea counsel and the State agreed that the recommendation on Oliphant's drug case was 10 years, with probation being denied, concurrent with other sentences. Plea counsel also asked the trial court to revoke Oliphant's probation in the two other cases and sentence Oliphant to seven years on each, to be

served concurrently with his other sentences. Oliphant agreed he was not contesting the revocation of his probation and was waiving his right to a hearing.

The trial court then stated its intent to grant allocution as to all four pending cases, and then proceed to sentencing. The trial court asked Oliphant: "By way of allocution, is there any legal reason the Court should not sentence you on each of these cases?" Oliphant replied, "No, sir."

The trial court sentenced Oliphant, consistent with the plea agreement, to eight years for each of the four counts, to be served concurrently with each other and other sentences, with restitution ordered as previously announced. The State then dismissed Counts V through X, in accordance with the plea agreement.

After being sentenced, Oliphant told the court that plea counsel had done everything he had asked of him, that he was satisfied with plea counsel's services, and that he had no complaints about plea counsel's representation. The trial court found no probable cause to believe Oliphant had received ineffective assistance of counsel.

Oliphant timely filed a pro se motion for post-conviction relief, and post-conviction counsel filed a statement in lieu of an amended motion.[3] The pro se motion asserted, in relevant part, that plea counsel "provided ineffective assistance of counsel . . . when he failed to explain to [Oliphant]

---

2. Oliphant had a public defender representing him on the two probation violation cases. Oliphant, and his public defender, both agreed to let plea counsel handle the disposition of those cases as well. Plea counsel made this announcement to the trial court stating that he had known Oliphant since 2009 and had represented him previously in other criminal matters. Oliphant confirmed to the trial court that he wanted plea counsel to represent him on the probation violation cases.

3. Pursuant to *Moore v. State*, 458 S.W.3d 822, 826 (Mo. banc 2015) (Fischer, J., concurring), we have independently verified that Oliphant's motion was timely filed. Oliphant was delivered to the Department of Corrections on March 11, 2015, and his motion was filed on May 21, 2015. *See* Rule 24.035b. Post-conviction counsel was appointed on May 26, 2015, and thereafter timely filed a "COUNSEL'S STATEMENT IN LIEU OF A RULE 24.035 AMENDED MOTION[.]"

of [sic] the definition and terms of 'allocution'[4] and of the relating requirements of Rule 32 of the Federal Rules of Civil Procedure (FRCP)."

An evidentiary hearing was held on Oliphant's motion on February 22, 2016.[5] Oliphant testified that plea counsel did not explain to him what the term "allocution" meant, and that if he had understood, he would have "spoke up" and told the court that "[plea counsel] didn't do a good job." Oliphant believed that would have "impacted the result of [his] case." Oliphant testified that he did not actually discuss the plea agreement with plea counsel, but only signed it because he "had other cases" that he was going through, and that he actually did not understand it. Oliphant admitted to lying under oath that he was happy with plea counsel's services, and the only reason he pled guilty was because he "was already facing some other stuff and just to get it out of the way, so I just went ahead and pled guilty to it. I was already going to jail for the distribution."

On August 15, 2016, the motion court entered its judgment denying Oliphant's motion. The motion court found that Oliphant's testimony at the evidentiary hearing that he did not understand the terms of the plea agreement was contradicted by his testimony at the plea hearing. The motion court further found that Oliphant's claim at the evidentiary hearing regarding dissatisfaction with plea counsel's performance was also directly controverted by Oliphant's testimony at the plea and sentencing hearings. As such, the motion court

found Oliphant's testimony at the evidentiary hearing to be "disingenuous," and found that his claims were refuted by the record. The motion court also found that Oliphant failed to show that his plea was not made voluntarily or knowingly. This appeal followed.

In his sole point relied on, Oliphant asserts the motion court clearly erred in denying his Rule 24.035 motion for post-conviction relief because plea counsel failed to interject and define the word "allocution" for Oliphant after the trial court used the word in a question to Oliphant. This is the only issue for our determination.

### Standard of Review

"On appeal from the denial of post-conviction relief, the motion court's findings are presumed correct." *Deck v. State*, 381 S.W.3d 339, 343 (Mo. banc 2012). Appellate review is expressly limited to a determination of "whether the motion court's findings of fact and conclusions of law are clearly erroneous." *Stanley v. State*, 420 S.W.3d 532, 539 (Mo. banc 2014); Rule 24.035(k). "[O]nly if, after review of the record, the appellate court is left with the definite and firm impression that a mistake has been made[,]" will the appellate court find the motion court's judgment to be clearly erroneous. *Id.* (internal quotation and citation omitted). "Even if the stated reason for a circuit court's ruling is incorrect, the judgment should be affirmed if the judgment is sus-

---

4. BLACK'S LAW DICTIONARY 83 (8th ed. 2004) defines "allocution" as

1. A trial judge's formal address to a convicted defendant, asking him or her to speak in mitigation of the sentence to be imposed. • This address is required under Fed. R. Crim. P. 32(c)(3)(C). 2. An unsworn statement from a convicted defendant to the sentencing judge or jury in which the defen-

dant can ask for mercy, explain his or her conduct, apologize for the crime, or say anything else in an effort to lessen the impending sentence. • This statement is not subject to cross-examination.

5. The same judge who presided at Oliphant's plea and sentencing hearing also presided at the evidentiary hearing.

tainable on other grounds." *Swallow v. State*, 398 S.W.3d 1, 3 (Mo. banc 2013).

■ "The motion court is free to believe or disbelieve any portion of the testimony, and we defer to the motion court's credibility determinations." *Winans v. State*, 456 S.W.3d 912, 916 (Mo.App. S.D. 2015). "We view the record in the light most favorable to the motion court's judgment, accepting as true all evidence and inferences that support the judgment and disregarding evidence and inferences that are contrary to the judgment." *Id.* (internal quotation and citation omitted).

## Analysis

■ To prevail on a claim of ineffective assistance of counsel, a movant must show that counsel did not demonstrate the customary skill and diligence that a reasonably competent attorney would display when rendering similar services under the existing circumstances, and that movant was prejudiced as a result. *Strickland v. Washington*, 466 U.S. 668, 687, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984). Where conviction results from a guilty plea, "any claim of ineffective assistance of counsel is immaterial except to the extent that it impinges the voluntariness and knowledge with which the plea was made." *Cooper v. State*, 356 S.W.3d 148, 153 (Mo. banc 2011) (internal quotation and citation omitted).

> In the context of a guilty plea, a movant establishes prejudice due to ineffective assistance of counsel by demonstrating that a reasonable probability exists that, but for plea counsel's errors, the movant would not have entered a guilty plea and would have insisted on proceeding to trial.

*Jones v. State*, 211 S.W.3d 210, 213 (Mo. App. S.D. 2007) (internal quotation and citation omitted).

■ Here, Oliphant's pro se motion alleged, in relevant part, that plea counsel "provided ineffective assistance of counsel ... when he failed to explain to [Oliphant] of [sic] the definition and terms of 'allocution' and of the relating requirements of Rule 32 of the Federal Rules of Civil Procedure (FRCP)."

Oliphant testified consistently with the facts alleged in his motion that if plea counsel had explained what the term "allocution" meant, Oliphant would have spoken up and explained to the trial court that "[plea counsel] didn't do a good job." Thereafter, the motion court entered its judgment denying Oliphant's motion for post-conviction relief. The motion court found:

> [Oliphant] was apprised of the terms of the plea agreement in this case verbally during the plea colloquy. [Oliphant] acknowledged the terms of the plea agreement, and acknowledged his signature at the bottom of the plea agreement. He was apprised of his trial and appellate rights. After he was so informed, he entered his guilty plea as to the four counts in the plea agreement. Such plea was made voluntarily, knowingly, and intelligently, and any statement by [Oliphant] now to the contrary is directly contradicted by the plea record....
>
> Additionally, any claim by [Oliphant] that he was unsatisfied with his attorney's performance at this point is disingenuous, and such claims are directly controverted by the record. [Oliphant] was asked twice during the plea colloquy as to his satisfaction with [plea counsel's] services, and [Oliphant] in both cases told the told the Court that he was satisfied. The evidence presented by [Oliphant] is insufficient to show that [Oliphant's] plea was not made voluntarily or knowingly. [Oliphant's] claim is thus without merit and is denied.

(The motion court's citations to the plea hearing transcript are omitted).

▮▮▮▮ These findings are supported by the record. Where, as here, a movant is given several opportunities to express his dissatisfaction with plea counsel to the court, but does not, the motion court does not err in rejecting his claim. *See, Lowery v. State*, 520 S.W.3d 474, 480-82 (Mo.App. S.D. 2017); *Ballard v. State*, 500 S.W.3d 294, 302 (Mo.App. E.D. 2016).[6]

The motion court, in essence, found that Oliphant's testimony was not credible, and denied post-conviction relief on that basis. In such a case, we must defer to the credibility determinations of the motion court. *Winans*, 456 S.W.3d at 916. The motion court did not clearly err in rejecting Oliphant's motion for Rule 24.035 post-conviction relief, with an evidentiary hearing. Point denied.

The judgment of the motion court is affirmed.

NANCY STEFFEN RAHMEYER, C.J., P.J.—Concurs

JEFFREY W. BATES, J.—Concurs

---

6. *Lowery* and *Ballard* both deal with situations where the motion court rejected a movant's claim for post-conviction relief *without* an evidentiary hearing, where the standard of review is more deferential to movant; that is, movant must simply allege facts, not otherwise refuted by the record, and the motion court must believe them for purposes of assessing whether movant is entitled to an evidentiary hearing. *See, Ballard*, 500 S.W.3d at 299-300. Here, where we are reviewing a motion for post-conviction relief *with* an evidentiary hearing, the motion court is free to believe or disbelieve whatever evidence it chooses. *Winans v. State*, 456 S.W.3d at 916. That is to say, there is no necessity that movant's dissatisfaction with plea counsel be contradicted by the record in order for the motion court to disbelieve movant's testimony.