

# Missouri Court of Appeals

## Southern District

### In Division

TERRENCE TYRELL TINSLEY, JR.,      )
                                   )
    Appellant,      )      No. SD38095
                                   )
v.                                 )      **Filed:  March 4, 2024**
                                   )
STATE OF MISSOURI,                 )
                                   )
    Respondent.     )

### APPEAL FROM THE CIRCUIT COURT OF JASPER COUNTY

Honorable Gayle L. Crane, Judge

## AFFIRMED

Terrence Tyrell Tinsley, Jr. appeals the denial of his Rule 24.035 motion for post-conviction relief after an evidentiary hearing.[1]  In a single point, Tinsley asserts plea counsel was ineffective in failing to investigate and depose a co-defendant ("J.C."). Finding no merit in Tinsley's point, we affirm the motion court's denial of Tinsley's motion for post-conviction relief.

### Background

Tinsley was charged with (Count 1) robbery in the first degree, (Count 2) armed criminal action, and (Count 3) resisting arrest, as a prior and persistent offender. Following a hearing, the plea court found beyond a reasonable doubt that Tinsley was a

---

[1] All rule references are to Missouri Court Rules (2021).

prior and persistent offender and would be sentenced as such if convicted at trial. That same day, Tinsley entered a plea agreement in which he agreed to enter an *Alford* guilty plea on Counts 1 and 2, and the State agreed to dismiss Count 3.[2]

At the plea hearing, Tinsley testified he understood the plea agreement, that no one was forcing him to plead guilty, and that he was pleading guilty on his behalf, "with a free mind[.]" The plea court reviewed Tinsley's rights to trial, including his right to call witnesses to testify on his behalf. Tinsley acknowledged he would be forfeiting those rights by pleading guilty and indicated he believed a jury verdict might result in a greater punishment than the punishment imposed by the court pursuant to the plea agreement.[3]

Tinsley was also asked about plea counsel's representation. Tinsley informed the plea court he had no complaints about the representation of his plea counsel, that plea counsel had done everything he had asked, that plea counsel had not done anything he had asked him not to do, that he had sufficient time to meet with plea counsel, and that he was happy with plea counsel's performance.

The State recited the factual basis for the guilty plea. According to the State, the evidence would show that Tinsley and a co-defendant held guns to the heads of two people (the "Victims") and threatened to kill Victims if they did not comply. One of the

---

[2] *See **North Carolina v. Alford***, 400 U.S. 25 (1970). "[A] defendant may enter what is, in effect, a guilty plea, even though the defendant protests that he or she is innocent of the crime charged." ***Nguyen v. State***, 184 S.W.3d 149, 152 (Mo. App. W.D. 2006). "[I]n reviewing a motion for post-conviction relief filed pursuant to Rule 24.035, an *Alford* plea is not treated differently from a guilty plea." ***Id.***

[3] The State, in its brief, points out that if Tinsley had proceeded to trial, and the State had proceeded with the charges contained in the amended felony complaint, Tinsley, as a prior and persistent offender, could have received a maximum sentence of 52 years' imprisonment. § 558.011, RSMo 2016; § 558.016, RSMo 2016; § 571.015, RSMo Cum. Supp. 2021.

Victims dropped a wallet and another co-defendant picked it up. Tinsley and the co-defendants then ran to a car and left the scene with Tinsley driving. Victims followed the car and noticed at least two guns were being waved out the windows of Tinsley's car. Victims eventually called the police, and the police later arrested Tinsley, who was found hiding in a shed after he crashed the car. In the shed, police also found a gun within arm's reach of where Tinsley was found. Tinsley also signed a written plea agreement reiterating that he was freely, knowingly, and voluntarily agreeing to the plea agreement.

The plea court found Tinsley's guilty plea was made voluntarily and intelligently with full understanding of the charges, the consequences of pleading guilty, and his rights regarding a jury trial. During his sentencing hearing, Tinsley again affirmed he had no complaints about plea counsel's representation. Tinsley was sentenced to consecutive sentences of ten years in prison for robbery and three years in prison for armed criminal action.

Tinsley timely filed his *pro se* motion and amended motion for post-conviction relief.[4] The amended motion claimed, in relevant part, "Tinsley was denied the effective assistance of counsel . . . by plea counsel's failure to investigate [J.C.]." Tinsley claimed if the case had gone to trial, J.C. would have testified that Tinsley did not intend to rob Victims and that no guns were drawn during the incident. According to Tinsley, had plea counsel investigated and deposed J.C., plea counsel would have discovered that

---

[4] We have independently verified the timeliness of Tinsley's post-conviction relief motions. *See* ***Moore v. State***, 458 S.W.3d 822, 825-26 (Mo. banc 2015); ***Dorris v. State***, 360 S.W.3d 260, 268 (Mo. banc. 2012).

J.C.'s testimony supported Tinsley's planned trial testimony that he did not intend to rob Victims.

The motion court held an evidentiary hearing on the post-conviction motion. Tinsley, J.C., and plea counsel testified. J.C., who is Tinsley's brother, testified he and Tinsley went to buy drugs from Victims. Unbeknownst to Tinsley, J.C. stole a bottle of Xanax during the drug transaction. J.C. claimed Victims began to follow them, so he and Tinsley flashed guns out of the car windows in an attempt to stop the pursuit. J.C. claimed this was the only time guns were displayed.

Tinsley testified he had contacted Victims in order to buy drugs. According to Tinsley, J.C. went to Victims' car to get the drugs. Upon his return to Tinsley's car, J.C. told Tinsley about the stolen Xanax bottle. Tinsley claimed that while Victims pursued them, it was J.C. and another co-defendant, not Tinsley, who flashed guns out of the car's windows. Tinsley admitted he attempted to hide one of the guns after he got out of his car.

Regarding plea counsel's representation, Tinsley testified he had asked plea counsel to contact J.C. but that plea counsel had not tried to do so until shortly before trial was scheduled to begin. Tinsley did not think plea counsel had ever spoken to J.C. Tinsley claimed he would have gone to trial had trial counsel deposed J.C. or had J.C. been available to testify at trial.

Plea counsel testified he attempted to locate J.C. but was unsuccessful. Plea counsel had spoken with J.C.'s relatives, who gave him the name of the building where J.C. was detained. Plea counsel was given a phone number for J.C.'s housing unit, but when he called that number, the person who answered did not know who J.C. was. Plea

4

counsel also contacted J.C.'s juvenile court attorney, but that attorney did not have any information to help him locate J.C.

Plea counsel also expressed his concerns about calling J.C. as a witness. According to plea counsel, he generally did not call co-defendants as witnesses at trial because jurors often do not believe co-defendants who testify to exonerate a defendant and he did not want to take the risk of Tinsley being impeached or discredited if J.C.'s testimony was not consistent with Tinsley's.

The motion court denied Tinsley's amended motion. In its order, it found plea counsel's testimony to be credible and Tinsley's and J.C.'s testimony to not be credible. The motion court further found Tinsley's responses to the plea inquiry showed his plea was knowing, intelligent, and voluntary, and emphasized that at the plea hearing, Tinsley did not indicate there was anything else he wanted plea counsel to do. Furthermore, the motion court found plea counsel adequately investigated J.C. by speaking with multiple individuals to try to locate J.C., and had a reasonable trial strategy for not calling J.C. as a witness, even if he could have located him.

Tinsley appeals from that order. In a single point, Tinsley argues the motion court erred in denying his amended motion for post-conviction relief because plea counsel was ineffective in failing to investigate and depose J.C.

### Standard of Review

On appeal, review of a denial of a Rule 24.035 post-conviction relief motion is "limited to a determination of whether the findings and conclusions of the [motion] court are clearly erroneous." *Johnson v. State*, 580 S.W.3d 895, 900 (Mo. banc 2019) (quoting *Latham v. State*, 554 S.W.3d 397, 401 (Mo. banc 2018)). A motion court's findings and conclusions are clearly erroneous if this Court is left with the definite and

5

firm impression that a mistake has been made. *McFadden v. State*, 619 S.W.3d 434, 445 (Mo. banc 2020). The motion court may believe or disbelieve any portion of testimony. *Borneman v. State*, 554 S.W.3d 535, 538 (Mo. App. S.D. 2018). We will defer to the motion court on determinations of credibility. *Id.* The movant bears the burden of demonstrating clear error by a preponderance of the evidence. *Cooper v. State*, 356 S.W.3d 148, 152 (Mo. banc 2011); Rule 24.035(i).

## Discussion

To prevail on a claim of ineffective assistance of counsel, a movant must show by a preponderance of the evidence: (1) that counsel's performance fell below an objective standard of reasonableness; and (2) that counsel's deficient performance actually prejudiced the movant. *Hefley v. State*, 626 S.W.3d 244, 249 (Mo. banc 2021). "To establish prejudice in a guilty-plea case, the movant must prove that he would not have pleaded guilty and would have demanded a trial, but for counsel's errors." *Easley v. State*, 623 S.W.3d 211, 216 (Mo. App. S.D. 2021).

Furthermore, "[a] claim of ineffective assistance of counsel is immaterial except to the extent it impinges the voluntariness and knowledge with which the plea was made." *Id.* "[T]he essential inquiry in a guilty plea proceeding is whether the plea was knowing and voluntary." *Id.* (quoting *Martin v. State*, 568 S.W.3d 78, 81 (Mo. App. S.D. 2019)). "A guilty plea generally waives any future complaint the defendant might have about trial counsel's failure to investigate his case." *Gooch v. State*, 353 S.W.3d 662, 666 (Mo. App. S.D. 2011) (quoting *Simmons v. State*, 100 S.W.3d 143, 146 (Mo. App. E.D. 2003)). Thus, because Tinsley pleaded guilty, our review of his claim regarding trial counsel's failure to depose J.C. is limited to whether it affected the voluntariness and knowledge with which Tinsley entered his guilty plea.

6

Tinsley's argument that the motion court erred in denying his amended motion for post-conviction relief fails for multiple reasons. First, Tinsley does not explain how plea counsel's alleged failure to investigate J.C. affected the voluntariness and knowledge with which he entered his guilty plea. Instead of addressing how it impacted his decision to plead guilty, Tinsley focuses entirely on whether plea counsel had a reasonable trial strategy in not calling J.C. as a witness:

> The motion court found that plea counsel adequately investigated [J.C.] and made a "*sufficient strategic decision*" that "would have applied even if [J.C.] had been located and agreed to testify[.]" However, a strategic decision requires knowing whether there were inconsistencies between the two testimonies, not just being concerned about the possibility of inconsistencies. Plea counsel could not make a strategic decision without knowing whether there were inconsistencies between their testimonies. This is the basis for [Tinsley's] entire claim.

(Internal citations omitted.) This argument is facially without merit. Even assuming plea counsel had no reasonable trial strategy in failing to call a particular witness, this argument would still fail because it does not demonstrate how plea counsel's alleged deficient performance affected the voluntariness and knowledge of his guilty plea. *See Houston v. State*, 623 S.W.2d 565, 567 (Mo. App. E.D. 1981) (rejecting movant's argument that plea counsel was ineffective where movant did not explain how plea counsel's actions affected the voluntariness of his plea); *Coon v. State*, 504 S.W.3d 888, 893 (Mo. App. W.D. 2016) (finding movant's claim to be facially without merit where movant did not allege it affected the voluntariness or knowledge of his guilty plea)). This is because claims of ineffective assistance of counsel following a guilty plea are waived except to the extent they impinge on the voluntariness and knowledge with which the plea was made. *Easley*, 623 S.W.3d at 216. By offering an argument that focuses solely on trial counsel's lack of a reasonable trial strategy, Tinsley has missed the

essential focus of our inquiry in these types of cases, which is whether the plea was made knowingly and voluntarily.

Second, Tinsley's argument overlooks our standard of review, which requires us to defer to the credibility determinations of the motion court. The motion court found plea counsel's testimony that he investigated calling J.C. as a witness and attempted to contact J.C. to be credible. In contrast, it found the testimony of Tinsley and of J.C. to not be credible. We must defer to those findings. Because Tinsley knew plea counsel could not locate J.C. and, nevertheless, expressed complete satisfaction with plea counsel's performance at the plea hearing, Tinsley fails to demonstrate plea counsel's failure to call J.C. as a witness affected the voluntariness of his guilty plea. *See **Collins v. State***, 447 S.W.3d 222, 224 (Mo. App. S.D. 2014) (affirming denial of Rule 24.035 amended motion where plea counsel could not locate witness and movant was fully aware of this fact but nevertheless expressed complete satisfaction with plea counsel's performance and pleaded guilty).

Finally, the plea hearing transcript belies any claim that Tinsley's guilty plea was entered involuntarily or without knowledge. The plea court advised Tinsley of his right to call witnesses, which Tinsley indicated he understood. Tinsley also indicated plea counsel did *everything* he asked him to do and that he was happy with plea counsel's representation.

> When a movant pleads guilty and then affirmatively states in court that he is satisfied with the performance of his trial counsel, he is not then entitled to an evidentiary hearing on a claim that counsel was ineffective for failure to investigate, because such claim is refuted by the record.

***Little v. State***, 427 S.W.3d 846, 851 (Mo. App. E.D. 2014) (quoting ***Simmons***, 100 S.W.3d at 146). If Tinsley were truly dissatisfied with plea counsel's failure to

8

investigate J.C. as a witness, he had ample opportunity during the plea proceedings to voice any such complaints.[5]

Tinsley fails to demonstrate how plea counsel's failure to contact and depose J.C. affected the voluntariness or knowledge of his guilty plea. The motion court did not clearly err in denying Tinsley's amended motion for post-conviction relief. Tinsley's point is denied.

## Conclusion

We affirm the motion court's denial of Tinsley's amended motion for post-conviction relief.


MARY W. SHEFFIELD, J. – OPINION AUTHOR

JEFFREY W. BATES, J. – CONCURS

JENNIFER R. GROWCOCK, J. – CONCURS

---

[5] Even if Tinsley had not waived his claim of ineffective assistance of counsel based on a failure to investigate J.C. by voluntarily pleading guilty, Tinsley's argument would fail because plea counsel *did* reasonably investigate J.C. as a witness. To prove ineffective assistance of counsel for failing to call a witness, the movant must show, among other things, that the witness could be located through reasonable investigation. ***Shockley v. State***, 579 S.W.3d 881, 906 (Mo. banc 2019). Counsel is not ineffective in failing to investigate a witness when counsel has insufficient information to allow him to locate the witness with a reasonable investigation. ***Jarmon v. State***, 740 S.W.2d 248, 249-50 (Mo. App. E.D. 1987). Plea counsel testified he attempted to locate J.C. by contacting his family, calling a number for the building in which J.C. was believed to have been living, and even contacted J.C.'s juvenile court attorney. The motion court found this testimony credible, and we defer to that finding. *See **Borneman***, 554 S.W.3d at 538. By attempting to locate J.C. through multiple channels, plea counsel reasonably investigated J.C. as a witness.